845 So.2d 1222 (2003)
Dale J. MADERE
v.
WESTERN SOUTHERN LIFE INSURANCE COMPANY.
No. 03-CA-110.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
*1223 Robert L. Walsh, New Orleans, LA, for Appellant.
*1224 Dale J. Madere, In Proper Person.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant/appellant Western-Southern Life Insurance Company appeals a judgment denying its Exception of Res Judicata and ordering it to reimburse plaintiff Dale Madere the sum of $500.00 for a treadmill, which the court found was medically necessary. We reverse.
The matter was originally filed in the district court in January 2000 as a Motion To Enforce Worker's Compensation Settlement. In the motion, Madere alleged that Western-Southern repeatedly failed to pay his medical bills pursuant to a Worker's Compensation settlement entered into on August 23, 1989, and asked that a special administrator be appointed to manage the bills. In February 2000, the trial court denied the motion, finding that the bills had been paid and that it did not have authority to appoint a special administrator. Approximately one year later, in February 2001, Madere filed two more Motions to Enforce the settlement, on similar grounds of unpaid medical expenses and for the cost of a treadmill prescribed by his physician. In June 2001, the motion was again denied, and the court found that the bills had once again been paid, and that Mr. Madere had not proven that the treadmill was a medical necessity. In August 2001, Madere filed a fourth Motion to Enforce, solely for the cost of the treadmill. Western-Southern responded that the issue was res judicata, in that Madere did not appeal or seek a rehearing on the earlier judgment. It further contended that Madere was not entitled to such equipment. Following a hearing, the trial court denied the Exception of Res Judicata, and granted the motion only insofar as to order reimbursement in the sum of $500.00 for the treadmill, which the court found medically necessary.
It is from this judgment that Western-Southern appeals. Madere has answered the appeal, contending the judgment should be modified to increase the amount to $5,895.00. As he did throughout the proceedings in the district court, he appears in proper person.
In 1985, Madere was injured in an auto accident, in the course and scope of his employment with Western-Southern. In 1989, the parties entered into a compromise, in which agreement Western-Southern agreed to pay 100% of all medical expenses incurred by Madere for the work-related injury. From the evidence of the underlying injury suffered in the accident, it appears that Mr. Madere had previously suffered from back problems, and in the accident re-injured his back, causing him to become disabled.
Mr. Madere's request for approval of medical equipment was within the scope of the compensation settlement agreement, in which Western-Southern agreed to pay 100% of all medical expenses incurred by him for his work related injury. It is apparent that these medical expenses are ongoing, and Western-Southern has acknowledged this by its payments to his treating physicians. Western-Southern is liable for medical expenses occurred if Mr. Madere's condition changes as a result of the accident. Thus, he was entitled to bring an action to enforce the agreement for expenses that were medically necessary.
We are of the opinion that the judgment on appeal was not barred by *1225 res judicata. Ordinarily, once a judgment becomes final and definitive, parties are bound by it regardless of a subsequent change in circumstances. Workers' compensation judgments, however, are treated differently from ordinary judgments. This is due to the fact that if the rules of finality applied to ordinary civil judgments are applied to workers' compensation judgments, the flexibility of the workers' compensation system would be greatly restricted.[1] Where the legislature has expressly provided that an award or judgment can be subject to a claim of modification, res judicata does not apply.[2] Under LSA-R.S. 23:1310.8, a compensation award may be modified by either party because of change in disability after an award has been made.[3]
The modification statute is to be liberally construed in favor of the claimant, and that through it, the Legislature did not intend that a judgment determining the extent of a claimant's disability be res judicata, it having expressly provided that a compensation award can be subject to modification based on a change in the worker's condition. The power of modification, while not a substitute for the appellate process, exists for the purpose of modifying awards due to a change in the worker's condition.[4]
Within the entire scheme [of worker's compensation], the concept of modification is unique because it allows a case to be reopened and the award amended after the judgment becomes final.[5] The purpose of the modification statute is to allow adjustments to be made after judgment "to insure that the employee will be paid compensation during the full period of his disability and that the employer will not be required to pay for any longer than this period of disability."[6] Where the legislature has expressly provided that an award or judgment can be subject to a claim of modification, res judicata does not apply.[7]
Applying the above principles to the present case, we find that Mr. Madere could pursue his motion for a second time, and that res judicata would not apply to bar the second motion. However, it was necessary that he prove a change in his condition since the time the first motion was denied.
At the hearing on the first motion, Western-Southern introduced the deposition of Dr. Burris. A neurologist, she had treated Mr. Madere since 1993, and at the time of the deposition, saw him regularly once or twice a year. In December 2000, Mr. Madere telephoned and requested a prescription for a treadmill. She did not approve the request because she felt that there were other ways he could exercise without a treadmill. Mr. Madere responded that he could not walk outside because he had a "foot drop," and that he stumbles and falls in the cracks. He had a treadmill for 30 years, and it had finally given out. *1226 Dr. Burris did not feel that she could justify the equipment as a medical necessity, and she has difficulty in so justifying any piece of exercise equipment for any patient. She indicated that Mr. Madere might obtain such a prescription from another physician.
Ramsey Horn, handled Mr. Madere's account with Gates McDonald, a third party administrator for Western-Southern. In December 2000, he received an invoice from Mr. Madere for a treadmill in the amount of $7,491.31, along with a prescription for a "walking treadmill" from Dr. Montegut, but that physician did not respond to his inquiry of whether the treadmill was a medical necessity. Dr. Burris, his treating neurologist, informed him that the treadmill was not medically necessary. Dr. Montegut later wrote that the treadmill was required "because of impairment of a cervical spine from an auto accident on 11/26 of '85 which prohibits him from exercising in other ways."
Mr. Madere stated that he needed the treadmill as an exercise device to relieve pain, and since his treadmill broke, he had to increase his pain medication. He does not sleep or function as well. Because of his drop foot condition, he stumbles when walking regularly, and he trips on cracks in the sidewalk when walking outside.
In the judgment denying the motion, the court found that Mr. Madere's treating neurologist, Dr. Debra Burris, did not find the treadmill was medically necessary, although Madere had a prescription for such equipment from Dr. Christy Montegut, his general practitioner. The court found it significant that Dr. Montegut did not examine Madere in connection with the treadmill request, and that no testimony from that physician was offered. The court held that Madere had not met his burden of proving that the treadmill was medically necessary.
At the second hearing, Mr. Madere stated that Dr. Burris was no longer treating him, and that Dr. Montegut was now his treating physician. After Dr. Montegut examined him, he agreed that Mr. Madere did need the treadmill and gave him the prescription.
The deposition of Dr. Montegut was admitted into evidence. Dr. Montegut stated Mr. Madere had long been a patient at the clinic, but that he had begun treating him for various problems in 1997. In June 2001, Mr. Madere came in for a checkup, for refills of pain medication for his neck and low back. He was seen again in July, and in August 2001, he complained of increasing pain in his lower back and right side. X-rays showed a compression fracture of the lumbar vertebra and degenerative arthritis. Mr. Madere, who had both lumbar and cervical laminectomies and a lumbar fusion, related that he felt a sharp pain in his back on making a sudden turn. Another x-ray in October showed the fracture was healing satisfactorily.
Mr. Madere suffers from chronic back and neck pain, and has a drop foot. In general, his condition has not changed in the last year. The first prescription for a walking treadmill was probably given as the result of a telephone request from Mr. Madere. It would be risky for him to walk on uneven surfaces because of his drop foot, and the treadmill provides an even surface. Although Dr. Montegut did not prescribe a walking program, such exercise helps strengthen the muscles of the lower back. Mr. Madere requested a prescription for a Quinton treadmill, although Dr. Montegut had never examined that particular brand and had no other reason to prescribe it. It would be convenient *1227 and helpful for him to have a treadmill at home, but was probably not medically necessary. The physical condition that requires him to use a treadmill is the same as it was in April 2001.
The trial court found after the second hearing that Dr. Montegut was Mr. Madere's current treating physician. From both Dr. Montegut's deposition, and other medical evidence, the court determined that even though Dr. Montegut did not use the term "medically necessary", it was plain that exercise in a controlled environment on a controlled surface was necessary, since Mr. Madere suffered from drop foot condition.
Based on the testimony of Dr. Montegut, his treating physician, Mr. Madere did not carry his burden of proving a change in his condition from the time of the first hearing. Therefore, we reverse the judgment of the trial court granting him $500.00 for partial reimbursement for the treadmill.
For the foregoing reasons, the judgment is reversed. Mr. Madere is assessed costs of this appeal.
REVERSED.
NOTES
[1] Falgout v. Dealers Truck Equipment Co., 98-3150 (La.10/19/99) 748 So.2d 399. Landreneau v. Liberty Mut. Ins. Co., 309 So.2d 283, 285-86 (La.1975),
[2] Falgout, supra; Jackson v. Iberia Parish Gov't, 98-1810 (La.4/16/99), 732 So.2d 517,
[3] Also, e.g., see Landreneau, supra.
[4] Jackson, supra.
[5] Falgout, supra, citing Denis Juge, Louisiana Workers' Compensation, § 3:7 (2nd ed.1999).
[6] Falgout, supra citing Landreneau, supra.
[7] Falgout, supra, citing Jackson, supra.