KIMBALL, Chief Justice.
 

 | |This case involves an uninsured motorist carrier who seeks to enforce its policy language allowing it to reduce any amount payable under its uninsured motorist coverage by any amount paid to or on behalf of its injured insured pursuant to the workers’ compensation law. For the reasons that follow, we conclude the uninsured motorist carrier and the workers’ compensation insurer are solidary obligors such that payment by one solidary obligor extinguishes the obligation of the other solidary obligor to the extent of the payment. We further conclude the collateral source rule does not apply to override the principles of solidary liability expressly set forth in the Civil Code. Because we find the injured party is provided full recovery of those damages paid by the workers’ compensation insurer even when the uninsured motorist carrier is allowed to reduce its payments by the amounts paid by the | {¡workers’ compensation insurer, we conclude the policy language is not against public policy and is enforceable.
 

 Facts and Procedural History
 

 Plaintiff, Mary Cutsinger, instituted the present action in the Pineville City Court against defendants, Laura Redfern (“the tortfeasor”), and her supposed automobile liability insurer, USAgencies Casualty Insurance Company (“USAgencies”), for damages she allegedly sustained in a motor vehicle accident on December 12, 2006. Plaintiffs uninsured motorist carrier, State Farm Mutual Automobile Insurance Company (“State Farm”), was also named as a defendant. At the time of the accident, plaintiff was in the course and scope of her employment. Accordingly, she was subsequently provided workers’ compensation benefits by her employer.
 

 USAgencies answered the petition and generally denied its allegations. It further
 
 *948
 
 asserted that although it had previously issued a policy of automobile liability insurance to the tortfeasor, the policy was canceled for non-payment of premium on December 6, 2006, at 12:01 a.m. USAgen-cies also filed a motion for summary judgment asking that it be dismissed from the proceedings with prejudice based on the cancellation of the policy. After a hearing on the matter, the trial court granted the motion for summary judgment and dismissed plaintiffs claims against USAgen-cies. The tortfeasor was thus uninsured at the time of the accident.
 

 Subsequently, plaintiff filed a motion for summary judgment asserting there was no question of material fact and judgment should be rendered finding that Laura Redfern, the tortfeasor, was solely liable for the accident at issue, that State Farm issued a policy of automobile liability insurance to plaintiff that provides uninsured motorist coverage for the accident at issue, that at the time of the accident Laura [sRedfern, the tortfeasor, was uninsured, and that State Farm is not entitled to a credit nor is it allowed to reduce the uninsured motorist coverage afforded plaintiff by any payments that may be made by plaintiff s employer or its workers’ compensation carrier. After a hearing, the trial court granted summary judgment as to liability, finding that the tortfeasor was solely at fault in causing the accident, that the tortfeasor was an uninsured motorist at the time of the accident, and that State Farm provided uninsured motorist coverage at the time of the accident to plaintiff. Further, the trial court granted summary judgment as to the issue of credit, finding that State Farm is not allowed to reduce the uninsured motorist benefits by any workers’ compensation payments made to plaintiff.
 

 State Farm appealed that portion of the judgment prohibiting it from reducing the uninsured motorist benefits by the amount of workers’ compensation benefits paid to plaintiff. The court of appeal affirmed the trial court’s grant of summary judgment in favor of plaintiff on this issue.
 
 Cutsinger v. Redfern,
 
 08-134 (La.App. 3 Cir. 10/1/08), 997 So.2d 585. In affirming the judgment of the trial court that disallowed the credit sought by State Farm, the court of appeal distinguished this court’s decision in
 
 Bellard v. American Central Ins. Co.,
 
 07-1335 (La.4/18/08), 980 So.2d 654, and concluded the collateral source rule applies to prohibit plaintiffs uninsured motorist carrier from reducing its uninsured motorist benefits by the amount of workers’ compensation payments received by plaintiff.
 
 [1]
 
 In
 
 Bellard,
 
 this court concluded that an employer’s uninsured motorist carrier is entitled to a credit in the amount of payments made by the employer and/or its workers’ compensation insurer to or on behalf of plaintiff. In reaching this decision, we found the employer’s uninsured motorist carrier and the employer and/or its workers’ compensation insurer were |4solidary obligors as to lost wages and medical expenses and, moreover, that the collateral source doctrine did not apply to prevent the credit. In the instant case, the court of appeal determined that because the plaintiff herself, and not her employer, paid for the uninsured motorist coverage, the collateral source rule applies and State Farm cannot reduce the uninsured motorist benefits by the amount of workers’ compensation benefits paid to plaintiff.
 

 We granted certiorari to consider the correctness of the court of appeal’s judgment.
 
 Cutsinger v. Redfern,
 
 08-2607 (La.1/16/09), 998 So.2d 88.
 

 
 *949
 
 Discussion
 

 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). Appellate courts review a judgment granting or denying a motion for summary judgment
 
 de novo. Bonin v. Westport Ins. Corp.,
 
 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Smith v. Our Lady of the Lake Hosp.,
 
 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment.
 
 Bonin,
 
 05-0886 at p. 4, 930 So.2d at 910.
 

 It is well-settled that an insurer may limit liability and impose reasonable restrictions upon its policy obligations provided that such limitations do not conflict Iswith statutory provisions or public policy.
 
 Bonin,
 
 05-0886 at p. 5, 930 So.2d at 911;
 
 Cadwallader v. Allstate Ins. Co.,
 
 02-1637, p. 9 (La.6/27/03), 848 So.2d 577, 583;
 
 Etienne v. National Automobile Ins. Co.,
 
 99-2610, p. 4 (La.4/25/00), 759 So.2d 51, 54. The law governing uninsured motorist coverage, La. R.S. 22:680, provides in part:
 

 No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of person insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (l)(a)(ii) of this Section.
 

 An uninsured motorist insurer’s liability “is conditioned by the tortfeasor’s total or partial lack of liability insurance, the type of damage [the tortfeasor] has caused and any limits in the insurer’s policy that are permitted by law.”
 
 Hoefly v. Government Employees Ins. Co.,
 
 418 So.2d 575, 579 (La.1982). Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who is not adequately covered by liability, insurance.
 
 Duncan v. U.S.A.A. Ins. Co.,
 
 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 547. The underlying purpose of uninsured motorist coverage “is to promote and effectuate complete reparation, no more or no less.”
 
 Hoefly,
 
 418 So.2d at 579.
 

 | (¡To carry out the objective of providing reparation for persons injured through no fault of their own, the statute is liberally construed.
 
 Taylor v. Rowell
 
 
 *950
 
 98-2865, p. 5 (La.5/18/99), 736 So.2d 812, 816;
 
 Roger v. Estate of Moulton,
 
 513 So.2d 1126, 1130 (La.1987). Any exclusion in uninsured motorist coverage must be clear and unmistakable.
 
 Duncan,
 
 06-0363 at pp. 4-5, 950 So.2d at 547.
 

 The uninsured motorist coverage that plaintiff purchased from State Farm contains a provision that any amount due under the policy’s uninsured motorist provisions shall be reduced by any amount paid pursuant to the workers’ compensation law. Specifically, the policy provides, under its uninsured motorist coverage, that the insurer will pay nonpunitive damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The policy further provides:
 

 Limits of Liability Under Coverage U
 

 [uninsured motorist coverage]
 

 [[Image here]]
 

 2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured:
 

 [[Image here]]
 

 b. under any workers’ compensation, disability benefits, or similar law.
 

 This does not reduce the limits of liability of this coverage.
 

 The language of this provision is clear and unambiguous. It provides that any damages for bodily injury for which the uninsured tortfeasor is liable that are also paid or payable to the insured under any workers’ compensation law, such as lost wages and medical benefits, will not be paid under the insured’s uninsured motorist coverage. This reduction, however, will not reduce the limits of liability of the uninsured motorist coverage.
 

 Plaintiff contends the uninsured motorist statute does not allow the insurer to 17reduce uninsured motorist benefits by the amount of workers’ compensation benefits paid to the insured. Plaintiff asserts the contract language is therefore in derogation of state law. She argues it would be a clear violation of public policy to allow a credit to an uninsured motorist insurer for workers’ compensation benefits paid to an insured. State Farm, on the other hand, contends plaintiff contracted for the credit and no statute prohibits it from asserting the credit.
 

 In
 
 Bellard v. American Central Ins. Co.,
 
 07-1335 (La.4/18/08), 980 So.2d 654, this court concluded an employer’s uninsured motorist carrier is entitled to a credit for medical and disability wage benefits paid on behalf of or to- the plaintiff by the workers’ compensation insurer. Although the uninsured motorist policy in that case did not contain language dictating the reduction in coverage for benefits paid under workers’ compensation insurance, this court nevertheless held the employer’s uninsured motorist carrier was entitled to the credit based on principles of solidarity and the inapplicability of the collateral source doctrine. Based on those same principles of solidary obligations and a finding that the collateral source doctrine does not apply in the instant case, as well as the purpose underlying the law governing uninsured motorist coverage, we find the language contained in State Farm’s policy relating to the reduction in uninsured motorist payments for any workers’ compensation benefits paid to the insured is not against public policy and is therefore enforceable.
 

 Louisiana Civil Code article 1794 provides the following with respect to a soli-dary obligation:
 

 An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.
 

 
 *951
 
 Applying this article, we explained in
 
 Bel-lard
 
 that a solidary obligation exists when |8the obligors: (1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability toward the creditor.
 
 Bellard,
 
 07-1335 at p. 11, 980 So.2d at 663-64 (citing
 
 Hoefly v. Government Employees Ins. Co.,
 
 418 So.2d 575, 576 (La.1982)). We noted that in
 
 Hoefly
 
 we examined each of these requirements to find the existence of solidary liability between an uninsured motorist carrier and a tortfeasor. Similarly, in
 
 Narcise v. Illinois Central Gulf Railroad Co.,
 
 427 So.2d 1192 (La.1983), we used these standards to find the existence of solidary liability between a railroad company liable to its employee under the Federal Employer’s Liability Act, 45 U.S.C. § 51,
 
 et seq.,
 
 and a tortfeasor. We also recounted that in
 
 Williams v. Sewerage & Water Bd. of New Orleans,
 
 611 So.2d 1383 (La. 1993), we again used the same analysis to find solidary liability between an employer and a third party tortfeasor. Finally, we explained that in each case, “we recognized and emphasized that it is the coextensiveness of the obligations for the same debt which creates the solidarity of the obligation.”
 
 Bellard,
 
 07-1335 at p. 11, 980 So.2d at 664.
 

 After observing these previous decisions in which we have found the existence of solidary obligations between an uninsured motorist carrier and a tortfeasor and between an employer sued for workers’ compensation benefits and a third par-tytortfeasor, we concluded in
 
 Bellard
 
 that “an analysis of the respective obligations of the uninsured motorist carrier and the employer and/or its workers’ compensation insurer leads to the conclusion that the requirements for a solidary obligation between these entities are satisfied.”
 
 Bel-lard,
 
 07-1335 at p. 11, 980 So.2d at 664. We thoroughly analyzed each of the components of solidarity to reach the conclusion that the uninsured motorist insurer and the employer and/or its workers’ compensation carrier are solidary obligors. As to the first component, we determined after a lengthy 19discussion that pursuant to the effect of law and the terms of their independent insuring agreements, the uninsured motorist carrier and the workers’ compensation insurer are obliged to the same thing since they share coextensive obligations to reimburse the tort victim for lost wages and medical expenses caused by the tortfeasor.
 
 Bellard,
 
 07-1335 at p. 13, 980 So.2d at 665. We pointed out that the workers’ compensation insurer and the uninsured motorist carrier are obligated to the same thing even though their obligations arise from different laws or different sources for each obli-gor.
 
 Bellard,
 
 07-1335 at p. 14, 980 So.2d at 665.
 
 See also
 
 La. C.C. art. 1797. Regarding the second component of solidarity, we determined that the uninsured motorist carrier and the employer and/or its workers’ compensation insurer share a common liability that is not subject to a plea of division.
 
 Bellard,
 
 07-1335 at p. 14, 980 So.2d at 665-66. Thus, each obligor is bound for the whole as to each element of damage that is coextensive.
 
 Bellard,
 
 07-1335 at p. 15, 980 So.2d at 666. Finally, we explained that as to the payment of lost wages and medical expenses, payment of the debt by either obligor exonerates the other from liability to the creditor.
 
 Bel-lard,
 
 07-1385 at p. 16, 980 So.2d at 666. Accordingly, in
 
 Bellard,
 
 we found all the requirements for a solidary obligation were met.
 

 In the instant case, the same analysis applies and we conclude the uninsured motorist carrier and the workers’ compensation insurer are solidary obligors. The fact that the uninsured motorist coverage was procured by plaintiff in this case rath
 
 *952
 
 er than her employer as was the case in
 
 Bellard
 
 makes no difference in the solidarity analysis. The result of the relevant inquiry is the same regardless of who purchased the uninsured motorist coverage. For the same reasons we recently provided in
 
 Bellard,
 
 we find the uninsured motorist carrier and the workers’ compensation insurer are obliged to the same thing, may each be compelled for the whole of their common | inliability, and payment by one exonerates the other as to the creditor. Therefore, we find the uninsured motorist carrier and the workers’ compensation insurer are solidary obligors who have coextensive obligations to reimburse plaintiff for lost wages and medical expenses she incurred as a result of her injury caused by the tortfeasor.
 

 Because the uninsured motorist carrier and the workers’ compensation insurer are solidary obligors, payment by one obligor relieves the other obligor of liability toward the obligee. When the workers’ compensation insurer pays benefits to plaintiff in the form of lost wages and medical expenses, the liability of the uninsured motorist carrier towards the plaintiff for those same lost wages and medical expenses is discharged. Consequently, the uninsured motorist carrier is no longer liable to plaintiff for the lost wages and medical expenses paid by the workers’ compensation insurer, and is entitled to reduce the payments owed under its uninsured motorist coverage by the amount of benefits paid by the workers’ compensation insurer. Plaintiff has fully recovered those damages, and the underlying purpose of the uninsured motorist law, which “is to promote and effectuate complete reparation, no more or no less,”
 
 Hoefly,
 
 418 So.2d at 579, is not hindered by the application of solidarity in this instance. Thus, the policy language mandating a reduction in uninsured motorist payments for any workers’ compensation benefits paid to the insured is consistent with the principle of solidary liability and the underlying purpose of the uninsured motorist law.
 

 This court has twice concluded that the collateral source rule does not apply to override the principles of solidarity expressly provided by the Civil Code.
 
 Bellard,
 
 07-1835 at p. 23, 980 So.2d at 670-71;
 
 Fertitta v. Allstate Ins. Co.,
 
 462 So.2d 159, 164 (La.1985). Nevertheless, plaintiff contends, and the court of appeal agreed, that the collateral source rule applies in this case to prohibit the uninsured motorist carrier 11Tfrom reducing plaintiffs benefits under its uninsured motorist coverage for any workers’ compensation payments made to or on behalf of plaintiff in accordance with its status as a solidary obligor. In
 
 Bellard,
 
 we explained that the collateral source rule was jurisprudentially imported into our law from the common law. Bel-lard, 07-1335 at p. 18, 980 So.2d at 667. The rule provides that “a tortfeasor may not benefit, and an injured plaintiffs tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor’s procuration or contribution.”
 
 Bellard,
 
 07-1335 at p. 18, 980 So.2d at 668 (quoting
 
 Bozeman v. State,
 
 03-1016, p. 9 (La.7/2/04), 879 So.2d 692, 698). The primary policy reason for the application of the collateral source rule is tort deterrence.
 
 Bellard,
 
 07-1335 at p. 19, 980 So.2d at 668;
 
 Bozeman,
 
 03-1016 at p. 12, 879 So.2d at 700. The rule reflects the beliefs that the tortfeasor should not profit from the victim’s prudence in obtaining insurance, and that by reducing the amount the tortfeasor would have to pay, the deterrent effect of the law would be hampered.
 
 Bellard,
 
 07-1335 at p. 19, 980 So.2d at 668.
 

 
 *953
 
 Courts have struggled with that aspect of the collateral source rule that seemingly allows the victim to receive a double recovery or windfall when he receives an outside payment. The purpose of tort damages is to make the victim whole, but when the victim is allowed to recover the same element of damages twice, that goal is thwarted.
 
 Bellard,
 
 07-1385 at p. 19, 980 So.2d at 668. However, this court has explained that an objectionable windfall does not occur when the injured party’s patrimony was diminished to the extent that he was forced to recover against outside sources, and the diminution of his patrimony constituted additional damages he suffered.
 
 Bozeman,
 
 03-1016 at p. 10, 879 So.2d at 699. In
 
 Bellard,
 
 we utilized the
 
 Bozeman
 
 rationale to state that “whether the collateral source rule applies depends to 112a certain extent upon whether the victim has procured the. collateral benefits for himself or has in some manner sustained a diminution in his or her patrimony in order to secure the collateral benefits such that he or she is not merely reaping a windfall or double recovery.”
 
 Bellard,
 
 07-1335 at p. 20, 980 So.2d at 669.
 

 Applying the foregoing principles, we concluded in
 
 Bellard
 
 that two primary considerations are guiding with respect to the collateral source rule: (1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his patrimony because of the availability of the benefit such that no actual double recovery would result from application of the rule.
 
 Bellard,
 
 07-1335 at pp. 20-21, 980 So.2d at 669. Employing these considerations lead us to conclude that the collateral source rule did not apply in that case. First, we determined that because neither the tortfea-sor nor her insurer, who had both settled with the plaintiff and were released, was requesting the reduction of damages or would benefit from the credit, application of the collateral source rule would not serve the goal of tort deterrence. Second, we found that application of the rule to prohibit a credit for workers’ compensation benefits received by the victim would allow the "victim to receive a double recovery of those benefits without having sustained a diminution in his patrimony because of the availability of workers’ compensation benefits. We concluded, “The collateral source rule has no application in cases where the plaintiff is injured in the course and scope of his employment at the hands of a third party tort-feasor and the employer is without fault.”
 
 Bellard,
 
 07-1335 at p. 22, 980 So.2d at 670. Thus, we found the principles of solidarity applied to mandate a credit in favor of the employer’s uninsured motorist carrier in the amount of payments made by the employer and/or its workers’ 1 ^compensation insurer to or on behalf of plaintiff.
 

 In discussing the applicability of the collateral source rule to the facts of the instant case, the court of appeal majority distinguished
 
 Bellard
 
 on the basis that the uninsured motorist coverage in that case was provided by the plaintiffs employer, and focused solely on the fact that plaintiff herself paid for the uninsured motorist coverage. Based on this distinction, the court concluded plaintiff would not be receiving a double recovery if the reduction in uninsured motorist payments was disallowed. Consequently, it found the collateral source rule applied and refused to allow plaintiffs uninsured motorist carrier to reduce its payments to plaintiff by the amount of workers’ compensation benefits she had received.
 

 In examining the applicability of the collateral source rule, the majority of the
 
 *954
 
 court of appeal viewed our decision in
 
 Bel-lard
 
 too narrowly. While it is important to consider whether plaintiff paid for the collateral source or suffered some diminution in her patrimony due to the availability of the benefit to determine whether a double recovery would result from application of the rule, this consideration alone is not the determinative factor in deciding whether the collateral source rule applies. The collateral source rule exists to prevent the tortfeasor from benefitting from the victim’s receipt of monies from independent sources. In this way, the collateral source rule furthers the major policy of tort deterrence. In this case, the tortfea-sor is not requesting the credit for workers’ compensation benefits paid. The tort-feasor will reap no benefits if the collateral source rule is not applied and the uninsured motorist carrier is allowed to reduce its payments to plaintiff by the amount of workers’ compensation benefits she received. The tortfeasor’s position will not change whether or not the credit is allowed.
 
 [2]
 
 Thus, application of the collateral 114source rule would not further the major policy goal of tort deterrence.
 

 Turning to the consideration of whether the victim paid for the collateral source such that no actual double recovery would result from application of the rule, we note that in
 
 Bellard
 
 we considered the collateral source to be the workers’ compensation benefits since it was the uninsured motorist carrier, rather than the tortfeasor or the plaintiff, who sought the credit. In the instant case, plaintiff did not sustain a diminution in her patrimony because of the availability of workers’ compensation benefits and could therefore be said to receive a windfall or double recovery of lost wages and medical benefits if the collateral source rule is applied to prohibit the credit for those benefits paid by the workers’ compensation insurer. Here, no right of reimbursement or subrogation exists in favor of the workers’ compensation insurer to prevent a double recovery. The terms of the uninsured motorist coverage purchased by plaintiff provide that there is no uninsured motorist coverage to the extent it benefits any workers’ compensation insurance company. This policy language has been held to be enforceable and not against public policy.
 
 Travelers Ins. Co. v. Joseph,
 
 95-0200, p. 11 (La.6/30/95), 656 So.2d 1000,1004 (“[N]o statutory provision or policy consideration precludes a UM carrier from contracting to exclude liability for compensation reimbursement.”). Further, workers’ compensation benefits are required by law and the law prohibits an employer from directly or indirectly assessing an employee with the cost of workers’ compensation insurance. La. R.S. 28:1163.
 
 See also Bellard,
 
 07-1335 at p. 22, 980 So.2d at 670.
 

 Plaintiff contends, however, and the court of appeal agreed, that she did pay for her own uninsured motorist coverage, which is a collateral source, and therefore | lficannot be said to receive a windfall or double recovery if the collateral source rule is applied to disallow the credit. Even if we were to find an analysis of the uninsured motorist coverage as the collateral source is proper when that entity is the one seeking a credit for benefits paid by a workers’ compensation insurer, we
 
 *955
 
 cannot say that she paid for uninsured motorist coverage to compensate her for benefits such as lost wages and medical payments previously paid by her employer’s workers’ compensation insurer or that applying the collateral source rule and disallowing the credit would not result in a windfall or double recovery. That is because the uninsured motorist policy she purchased contained language specifying that any amount payable under uninsured motorist coverage shall be reduced by any amount paid under workers’ compensation benefits. Consequently, when she paid the premium for the uninsured motorist coverage, she did not pay for it to cover benefits paid by the workers’ compensation insurer.
 

 Application of the collateral source rule in this case would not further the major policy goal of tort deterrence and we cannot find that application of the rule would not result in a windfall or double recovery to plaintiff. Further, this court has specifically stated that the collateral source rule does not apply to override the principles of solidarity expressly provided by our Civil Code. In light of these facts, we conclude the collateral source rule should not be applied in this case.
 

 In the instant case, plaintiffs uninsured motorist carrier and her employer’s workers’ compensation insurer are solidary ob-ligors such that payment by one solidary obligor extinguishes the obligation of the other solidary obligor to the extent of the payment. Payment by the workers’ compensation insurer of lost wages and medical benefits fully compensates plaintiff for those damages. The collateral source rule does not apply to override the principles of solidarity. We find the language | ^contained in the uninsured motorist policy allowing the carrier to reduce uninsured motorist benefits by the amount of workers’ compensation benefits paid to the insured is not against public policy and is enforceable.
 
 [3]
 
 Thus, the uninsured motorist carrier is entitled to reduce its payments under the uninsured motorist coverage by any amount paid to or on behalf of plaintiff by the workers’ compensation insurer.
 
 [4]
 
 Consequently, the lower courts
 
 *956
 
 erred in granting summary judgment in favor of plaintiff and thereby not allowing the uninsured motorist carrier to reduce its payments by the amounts paid to or on behalf of plaintiff by the workers’ compensation insurer.
 

 Decree
 

 For the foregoing reasons, we find the lower courts’ judgments granting summary judgment in favor of plaintiff insofar as they refused to allow the uninsured 117motorist carrier a credit for the benefits paid to or on behalf of plaintiff by the workers’ compensation insurer were in error. The judgment of the court of appeal is reversed. The case is remanded to the trial court for it to conduct further proceedings not inconsistent with this opinion.
 

 REVERSED AND REMANDED.
 

 VICTORY, J., concurs in the result.
 

 [1]
 

 . One judge concurred in part and dissented in part from the court's ruling.
 

 [2]
 

 . Plaintiff argues that the tortfeasor is benefit-ted when the collateral source rule is not applied and the uninsured motorist carrier is allowed the credit because the uninsured motorist’s subrogation claim against the tortfea-sor would be lessened. While it is true that allowing the credit would decrease the amount the uninsured motorist carrier could seek to recover from the tortfeasor, the tort-feasor would be subject to a claim of reimbursement by the workers’ compensation insurer for the benefits paid to or on behalf of the victim.
 
 See
 
 La. R.S. 23:1101.
 

 [3]
 

 . We have explained that plaintiff’s uninsured motorist carrier and her employer's workers' compensation insurer are solidary obligors such that payment by one solidary obligor extinguishes the obligation of the other soli-dary obligor to the extent of the payment. Plaintiff is fully compensated for her damages and the obligation of the uninsured motorist carrier is extinguished only when the workers’ compensation insurer actually pays benefits due under the workers’ compensation law. The uninsured motorist policy provides that any amount payable under the uninsured motorist coverage shall be reduced by any amount
 
 paid or payable
 
 to the insured under any workers' compensation law. Because the solidary obligation is extinguished only when the workers' compensation insurer pays the benefits owed to plaintiff, the language "or payable” is not properly enforceable and should be stricken.
 

 [4]
 

 . In
 
 Travelers Ins. Co. v. Joseph,
 
 95-0200 (La.6/30/95), 656 So.2d 1000, this court stated in dicta, "A UM insurer may not reduce its liability by compensation benefits paid to an insured when the credit reduces the UM amount available to the insured. This is consistent with the strong public policy favoring full recovery by UM insureds.”
 
 Joseph
 
 at p. 11, 656 So.2d at 1004. As evidenced by the foregoing discussion and analysis, this superfluous language was erroneous.
 

 Along these same lines, plaintiff points out that when her uninsured motorist carrier tendered payment it took a credit for the workers' compensation benefits previously paid to her and the tender was thereby reduced to an amount less than $10,000, the minimum liability limits required by law. This does not invalidate the propriety of the credit. The workers' compensation benefits paid to or on behalf of plaintiff in the form of lost wages and medical payments extinguished the obligation of the uninsured motorist carrier, a solidary obligor, as to those damages. They were no longer due to plaintiff by the uninsured motorist carrier. That fact that the
 
 *956
 
 damages owed to her by the uninsured motorist carrier fell below
 
 $10,000 does not
 
 render the credit against public policy. Rather, the application of principles of solidary liability is in accord with the express public policy of this state. Had the damages owed to plaintiff by the uninsured motorist carrier been greater, they would have been paid by the uninsured motorist carrier up to the limits of its liability.