WELCH, J.,
concurring.
hi respectfully concur with the result reached by the majority with regard to the $10,000 credit for UM benefits only because we are bound by the Supreme Court’s decision in Fertitta v. Allstate Insurance Company, 462 So.2d 159, 164 n. 7 (La.1985), which, based on principles of solidary liability, rejected the application of the collateral source rule to UM benefits. I write separately to express my view that the strong public-policy considerations in support of the collateral source rule, enunciated by the Supreme Court after Fertitta in Bozeman v. State, 2003-1016 (La.7/2/04), 879 So.2d 692, 698, should be applied herein to override the principles of solidarity to prohibit the tortfeasor, Ms. Greenup, and/or her insurer, USAA from receiving a credit for UM benefits procured by Ms. Howard, the injured victim, independent of the tortfeasor and to urge the Supreme Court revisit Fertitta, in light of Bozeman, on this particular issue.
Under the collateral source rule, payments received from an independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. Bozeman, 879 So.2d at 698; Louisiana Department of Transportation and Development v. Kansas City Southern Railway Co., 2002-2349 (La.5/20/03), 846 So.2d 734, 739. As a *403 result, the tortfeasor is not allowed to benefit from the victim’s foresight in purchasing insurance and other benefits. Bozeman, 879 So.2d at 698.
| rAs set forth by the majority, in Fertit-ta, the Supreme Court was asked to determine whether a tort victim’s judgment against a tortfeasor for the full amount of the victim’s damages should be reduced by the amount of the victim’s pretrial settlement with his UM carrier when the UM carrier waived any right of reimbursement or subrogation. The Supreme Court concluded that the victim’s UM carrier and the tortfeasor were solidarity "liable-and, relying on the principles of solidarity, held that the payment by the victim’s uninsured motorist carrier must be imputed to the debt owed by the tortfeasor.' In so holding, the Supreme Court rejected, in footnote, an argument urging the application of the collateral source rule, and essentially concluded that the rule does not apply to override principles of solidary liability expressly set forth in the civil code. Fertitta, 462 So.2d at 164 n. 7.
However, since the Fertitta decision, the strong public policy concerns supporting the collateral source rule set forth in Bozeman, resulted in, an analysis by the Supreme Court, in Cutsinger v. Redfern, 2008-2607 (La.5/22/09), 12 So.3d 945, 951 and Bellard v. American Central Insurance Co., 2007-1335. (La.4/18/08), 980 So.2d 654, 670-671, of the application of the collateral source rule vis-a-vis solidary obli-gors to determine whether the principles of solidarity may be overridden by - the application of the evotying strong public policy concerns supporting the collateral source rule. Under the particular facts of Cutsinger and Bellard, the Supreme Court ultimately concluded that the collateral source rule was inapplicable. However, if the principles of solidarity were absolute and could not be overridden by the application of the collateral source rule, as seemingly alluded to in the footnote in Fertitta, then there would have been no reason for the Supreme Court to conduct the analysis, not once, but twice.
As set forth in Bellard, 980 So.2d at 668, a troubling aspect of the collateral source rule for the courts is the “double recovery” or “windfall” that might arise as ¡¡¡a consequence of the victim’s" receipt of an outside payment. The guiding principles of awarding tort damages are to deter wrongful conduct and to make the victim whole. This goal is thwarted, and the law is violated, when the victim is allowed to recover the " same element of damages twice. Id: An exception is the collateral source rule that damages recoverable for a wrong, are not diminished by the -fact that the injured victim has been wholly or partly indemnified by insurance to whose procurement the tortfeasor or wrongdoer did not contribute. Thus,. an objectionable “windfall” does not occur when the injured party’s patrimony was diminished to the extent that he was forced to recover against outside sources, and. the diminution of his - patrimony constituted .additional damages he suffered. Cutsinger, 12 So.3d at 953, citing Bozeman, 879, So.2d at 699.
In Bozeman, the Supreme Court addressed the conflict that was raised between the two guiding principles of tort damages (to deter wrongful conduct and to make the victim whole) when the collateral source rule is applied in instances in which an actual windfall or double recovery would be realized by the injured party, i.e., medical expenses “written off’ or contractually adjusted by healthcare providers pursuant, to the federal Medicaid program, when no consideration is provided by the recipient for .the receipt of Medicaid benefits. In holding that the Medicaid recipient is unable to collect the Medicaid “write-off’ as damages, the Supreme *404 Court advised that in those instances, where plaintiffs patrimony has been diminished in some way in order- to obtain the collateral source benefits, then plaintiff is entitled to the full benefit of the bargain, and may recover the full value of his medical services, including the “write-off’ amount. Bozeman, 879 So.2d at 705-706. Thus, whether the collateral source rule applies depends, to a certain extent, upon whether the victim has procured the collateral benefits for himself or has, in some manner, sustained a- diminution in his or her patrimony in order to |4secure, the collateral benefits such that he.or she is not merely reaping a windfall or double recovery. Bellard, 980 So.2d at 669.
Thus, after Bozeman, two primary considerations guide the determination with respect to the collateral source rule. The first consideration is whether application of the rule will further the major policy goal of tort deterrence. Bellard, 980 So.2d at 669. The second consideration is whether the victim, by having a collateral source available as a source of recovery,either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule. Bellard, 980 So.2d at 669.
The application of those two considerations in Bellard led to the conclusion that an employer’s UM carrier was entitled to a credit for medical and- disability wage benefits paid on behalf of or to the plaintiff by the workers’ compensation insurer based on principles- of solidarity and the inapplicability of the collateral source doctrine. First, the Supreme Court determined that because neither the tortfeasor nor her insurer, who had both settled with the plaintiff and were released, were requesting the reduction of damages or would benefit from the credit, application of the collateral source rule would not serve the goal of tort deterrence. Second, the Supreme Court found that application of the rule to prohibit a credit for workers’ compensation benefits received by the victim would allow the victim to receive a double recovery of those benefits without having sustained a diminution in his patrimony because of the availability of workers’ compensation benefits.
■ Those same principles of solidary obligations and a finding that the collateral source doctrine did not-apply, as well as the purpose underlying the law governing uninsured motorist coverage, which “is to promote • and effectuate complete reparation, no more or no less,” led the Supreme Court in Cutsinger, 12 So.3d at 952, to conclude that language contained in the injured victim’s UM policy relating to the reduction in UM payments for any workers’ compensation benefits paid to the insured is not against public policy, and was therefore enforceable. The Supreme Court held that the injured victim’s procu-ration of the UM policy, and the resulting diminution of her patrimony, was not a controlling factor under the facts of that case because the tortfeasor was not requesting the credit for workers’ compensation benefits paid; therefore, the tortfea-sor would reap' no benefit if the collateral source rule was not applied and the uninsured motorist carrier was allowed to reduce its payments to plaintiff by the amount of workers’ compensation benefits she’ received. Because the tortfeasor’s position would not change whether or not the credit was allowed, the Supreme Court held that the application of the collateral source rule would not further the major policy goal of tort deterrence. Cutsinger, 12 So.3d at 952. The Supreme Court then concluded that the “[ajpplication of the collateral source rule in this case would not further the major policy goal of tort deterrence and we cannot find that application *405 of the rule would not result in a windfall or double recovery to plaintiff. Further, this court has specifically stated that the collateral source rule does not apply to override the principles of solidarity expressly provided by our Civil Code. In light of these facts, we conclude the collateral source rule should not be applied in this case.” Again, if the principles of solidarity were absolute, then there was no reason for the Court to analyze the applicability of the collateral source doctrine.
An analysis of the two policy considerations of the collateral source rule to the particular facts of instant case leads to the conclusion that the collateral source rule applies under the circumstances presented. First, this is a case where the tortfeasor, Ms. Greenup, and/or her insurer, USAA, are requesting the credit or reduction of damages. Therefore, the application of the collateral source rule in this instance will serve the goal of deterring wrongful conduct by imposing |,¡responsibility on Ms. Greenup for making Ms. Howard (the injured victim) whole, while the failure to apply the collateral source rule would counter that goal by providing a windfall to the tortfeasor to the detriment of the injured victim’s patrimony. Allowing the tortfeasor any credit or benefit from the victim’s prudence in obtaining underin-sured motorist liability insurance hampers the deterrent effect of tort law and provides disincentive for the tortfeasor to conform his conduct to standards of reasonableness. See Bellard, 980 So.2d at 669.
Second, under the facts of this case, should the collateral source rule apply to prohibit a credit to the tortfeasor for the underinsured motorist liability benefits procured by the injured victim, then the plaintiff will not receive a windfall or double recovery of damage because she has also sustained a diminution in her patrimony because she provided the consideration in form of payments of premium for the collateral source underinsured motorist liability benefit. See Bozeman, 879 So.2d at 699. The collateral source rule was established to prevent the tortfeasor or his insurer from taking advantage of payments received by the injured victim as a result of his own contractual arrangements entirely independent of the tortfeasor. Part of the rationale for this rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured victim through his own independent arrangements.
In conclusion, I believe that the collateral source rule applies to override the principles of solidarity expressly provided by the Civil Code to prohibit the tortfeasor or his insurer from receiving a credit for UM benefits procured by the injured victim independent of the tortfeasor or his insurer. In reaching this conclusion, I note that the majority of jurisdictions that have addressed the issue agree that the collateral-source rule applies to UM insurance benefits paid to the insured. See Ex parte Barnett, 978 So.2d 729 (Ala.8/3/07) (holding that UM benefits are a collateral source that may not be used to diminish an award in favor 17of a plaintiff in an action against a tortfeasor); International Sales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569, 571 (Fla.1972) (holding that neither the UM statute, caselaw, nor the contract in the case allowed the defendant to set off UM benefits paid to the plaintiff); State Farm Mut. Auto. Ins. Co. v. Board of Regents of Univ. Sys., 226 Ga. 310, 311, 174 S.E.2d 920, 922 (1970) (finding that “payments made by the insurance company under the policy are not payments made by or on behalf of the uninsured motorist-tortfeasor, and do not affect the uninsured motorist’s liability to pay the damages recovered in the lawsuit against him.”); Dyet v. McKinley, 139 Idaho 526, 531, 81 P.3d 1236, 1241 (2003) (holding that *406 UM insurance- benefits are a collateral source); Beaird v. Brown, 58 Ill.App.3d 18, 21, 373 N.E.2d 1055, 1057, 15 Ill.Dec. 583, 585 (1978) (finding that “payments received by the plaintiffs pursuant to their uninsured motorist coverage were received from a collateral source”); Southard v. Lira, 212 Kan. 763, 770, 512 P.2d 409, 415 (1973) (finding that “payments made by an insurance carrier under uninsured motorist coverage, [are not] payments which a tort-feasor can utilize to diminish the amount of his liability to the injured party”); Estate of Rattenni v. Grainger, 298 S.C. 276, 278, 379 S.E.2d 890, 890 (1989) (finding “no persuasive reason to distinguish underinsurance proceeds from other insurance proceeds that are subject to the collateral source rule”); and Johnson v. General Motors Corp., 190 W.Va. 236, 244, 438 S.E.2d 28, 36 (1993) (holding “that the collateral source rule operates to preclude the offsetting of uninsured or underin-sured benefits since the benefits are the result of a contractual arrangement which is independent of the tortfeasor”).[1]
. | RHowever, until the Louisiana Supreme Court revisits Fertitta on this particular issue in light of the public policy considerations set forth in Bozeman, we are bound by its holding.
Thus, I respectfully concur.

. In addition, it is fundamentally unfair that the determination of whether the tortfeasor gets a credit rests solely with a decision by the victim’s UM insurer as to whether it waives subrogation, which has nothing to do with the policy considerations underlying the collateral source rule. Further, this could lead insurers to reciprocally waive subrogation in cases involving UM benefits, thus calling into question whether the waiver of subrogation was made in good faith to their insured or whether it was an accommodation to the tortfea-sor's insurer.