# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1054

DWAYNE OLIVIER

VERSUS

CITY OF EUNICE

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03,
PARISH OF CALCASIEU, No. 09-5321
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE
**********

### ELIZABETH A. PICKETT
### JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Marc T. Amy, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

Cooks, J., agrees in part and dissents in part and assigns written reasons.

### REVERSED IN PART; AFFIRMED IN PART.

**Randall B. Keiser**
**D. Heath Trahan**
**Keiser Law Firm, P.L.C.**
**P.O. Box 12358**
**Alexandria, Louisiana 71315**
**Telephone: (318) 443-6168**
**Counsel for Defendant/Appellant:**
    **City of Eunice**

**Kevin L. Camel**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, Louisiana 70601**
**Telephone: (337) 436-6611**
**Counsel for Plaintiff/Appellee:**
    **Dwayne Olivier**

**PICKETT, Judge.**

Employer appeals judgment denying its exception of prescription and awarding firefighter medical benefits, a penalty, attorney fees, and costs. We reverse in part and affirm in part.

**FACTS**

The facts in this case are not in dispute. Dwayne Olivier was employed as a firefighter by the City of Eunice (the City) from 1985 until 2007. He injured his back in 2006 and has been disabled due to that injury since that time.

Prior to that, in 2004, Mr. Olivier began experiencing chest pain for which he sought treatment. He was ultimately diagnosed as having aortic valve bicuspid stenosis and underwent surgery in 2010 to replace his bicuspid aortic valve to relieve the symptoms of the stenosis. Mr. Olivier made several written requests to the City for reimbursement of his medical expenses and authorization for medical treatment. The City denied his requests, contending his heart condition was not work-related. Mr. Olivier was a beneficiary under a Blue Cross Blue Shield of Louisiana (Blue Cross) health insurance plan provided through his wife's employer, and he submitted his medical expenses to Blue Cross for payment when the City did not pay or authorize the expenses. Blue Cross paid his claims.

In 2008, Mr. Olivier filed this action for workers' compensation benefits, seeking authorization for medical treatment and reimbursement for medical expenses for his heart-related problems pursuant to the Heart and Lung Act. La.R.S. 33:2581. He also sought penalties and attorney fees for not providing medical treatment and not paying his medical expenses. Mr. Olivier's medical expenses associated with his heart condition for the period 2006 through the date of trial totaled $121,247.48; Blue Cross paid $115,653.17 of those expenses. The remaining $5,594.31 represents deductibles and co-payments for which Mr. Olivier

was responsible. In addition, Mr. Olivier spent $2,260.86 on lodging, meals, and mileage in connection with treatment he received from 2006 to the time of trial.

The City filed an exception of prescription which the Workers' Compensation Judge (WCJ) denied. The City applied for supervisory writs to the Third Circuit Court of Appeal and for writ of certiorari to the Louisiana Supreme Court. Both applications were denied. *See Olivier v. City of Eunice*, an unpublished writ bearing docket number 09-1325 (La.App. 3 Cir. 3/2/10), and *Olivier v. City of Eunice*, 10-757 (La. 6/4/10), 38 So.3d 304, respectively.

Four issues were presented at the trial on the merits: (1) whether the claim for medical expenses had prescribed; (2) whether the medical expenses were causally related to an injury/illness arising out of employment; (3) if the medical expenses were related, whether the City was entitled to a medical expense offset under La.R.S.23:1212(A); and (4) if related, whether penalties and attorney fees should be imposed.

At the conclusion of the trial, the WCJ took the matter under advisement. Thereafter, he issued Oral Reasons for Judgment in which he held: (1) he would not re-examine the prescription issue because of the writ denials; (2) the presumption of the Heart and Lung Act was not rebutted, and the City was obligated to pay for all treatment and expenses related to Mr. Olivier's "cardiac condition"; (3) the City was entitled to a 64.5% medical expense offset in the amount of $74,596.29 under La.R.S. 23:1212(A); (4) Mr. Olivier was entitled to an award of $41,056.88, which is the percentage (35.5%) of the medical expenses already paid by Blue Cross that was not subject to the offset; and (5) Mr. Olivier was entitled to recover $5,594.31 attributable to co-payments on his medical expenses, $928.26 in meals and lodging, and $1,332.60 in mileage; (6) Mr. Olivier

2

was entitled to a $2,000.00 penalty for the City's denial of benefits; and (7) Mr. Olivier was entitled to an attorney fee award of $12,600.00.

After a judgment was signed, the City filed a Motion for New Trial, seeking to: (1) replace language in the judgment regarding Mr. Olivier's "heart condition" with his precise medical condition; (2) insert language into the judgment specifically granting the City a La.R.S. 23:1212(A) offset in the amount $74,596.29; and (3) reverse the $41,056.88 award of Mr. Olivier's medical expenses paid by Blue Cross.

After a hearing on the Motion for New Trial, the WCJ: (1) granted the City's request to replace the phrase "heart condition" with precise language; (2) denied the motion's request to specifically insert the $74,596.29 figure into the judgment; and (3) denied the City's request to reverse the $41,056.88 award to Mr. Olivier. An Order granting in part and denying in part the Motion for New Trial and an Amended Judgment were signed the same day. This appeal followed. Mr. Olivier answered the appeal, seeking an increase in the trial court's award of attorney fees and an additional award of attorney fees for work performed on appeal.

### ASSIGNMENTS OF ERROR

The City of Eunice assigns four errors:

1) The trial court committed legal error by employing an incorrect legal standard to govern the burden of persuasion necessary to rebut the presumption of causation under the Heart and Lung Act. Consequently, this Court should conduct a de novo review of the record on the issue of causation.

2) The trial court committed manifest error when it found that the City's evidence did not rebut the presumption that Mr. Olivier's aortic stenosis was causally related to employment.

3) The trial court committed legal error when it denied the City's Exception of Prescription and refused to reconsider it at trial.

3

4) The trial court committed legal error when it awarded Mr. Olivier $41,056.88 in medical expenses already paid by Blue Cross.

## DISCUSSION

### *Did the WCJ apply the wrong burden of proof to the City's defense?*

In his reasons for judgment, the WCJ stated that to overcome the presumption of the Heart and Lung Act, an employer must present "positive medical evidence that a firefighter's heart condition was caused solely by something other than his employment and was not aggravated or accelerated in any way by that employment." The City complains that this was error.

The Heart and Lung Act provides that after an employee has been employed five years as a firefighter, any heart or lung ailments suffered by the firefighter are presumed to be related to their employment. La.R.S. 33:2581. In *McClure v. City of Pineville,* 06-279 (La.App. 3 Cir. 12/6/06), 944 So.2d 795, *writ denied*, 07-40 (La. 3/9/07), 949 So.2d 445, this court explained the application of the Heart and Lung Act:

> The Heart and Lung Act provides that once a fireman has established that the presumption is applicable, i.e., lung disease manifested after he had been employed for five years, his employer must prove that the disease *did not develop* during his employment to relieve itself from the obligation of paying workers' compensation benefits. La.R.S. 33:2581. It does not require "conclusive evidence" that exposure during his employment caused his heart or lung condition as argued by LWCC. To successfully defend a claim under the Heart and Lung Act, the employer must produce affirmative evidence to establish that the fireman's heart or lung condition did not develop during his employment. This is an almost impossible burden because the employer must prove a negative, i.e., the fireman's heart or lung disease or infirmity "could *not* have resulted from his service as a firefighter."
>
> . . . .
>
> Medical testimony to the effect that a firefighter's employment probably did not contribute to a fireman's lung disease, which is tempered by an acknowledgment that his employment cannot be ruled

4

out as a contributing factor, is not sufficient to rebut the Heart and Lung Act's presumption.

*Id*. at 802 (quoting *Rothell v. City of Shreveport*, 626 So.2d 763, 766 (La.App. 2 Cir. 1993), *writ denied*, 93-3191 (La. 2/11/94), 634 So.2d 379) (citations omitted).

*McClure* reiterated with approval the jurisprudential rule that to overcome the Heart and Lung Act presumption, the City had to prove that the employee's "heart disability could *not* have resulted from his service as a firefighter." *Id*. The court then explained that the probability that a firefighter's employment did not contribute to his lung disease is insufficient to rebut the presumption if his employment cannot be ruled out as a contributing factor. While the WCJ's terminology is not the same as that employed in *McClure* and other Heart and Lung Act cases, the resulting standard is. Accordingly, this assignment of error is without merit.

***Did the WCJ commit manifest error in finding the City did not rebut the presumption of the Heart and Lung Act?***

The City complains that the WCJ erred in concluding that the medical evidence did not establish that it rebutted the Heart and Lung Act presumption. Review of the medical evidence shows no error with that conclusion.

Mr. Olivier's surgeon, Dr. Basel Ramlawi, testified that Mr. Olivier was born with a bicuspid aortic valve and that the normal aortic valve is tricuspid. He explained that bicuspid valves "are predisposed to become calcified" and "to develop premature aortic stenosis." While Dr. Ramlawi believed this is what happened to Mr. Olivier, he further explained, "There's no way to prove that but . . . [Mr. Olivier] fits into the typical form of patients with bicuspid aortic valves with premature calcification."

5

Dr. Ramlawi testified there is no evidence that firefighting contributes to or leads to aortic stenosis, but he also testified that there is no evidence firefighting does not aggravate, contribute to, accelerate, or cause aortic stenosis. Despite not being aware of any study which shows "there is no possible way that employment as a firefighter can aggravate, contribute to, accelerate or cause aortic stenosis," Dr. Ramlawi opined, "I don't think anybody can rule it out." Dr. Ramlawi, however, also testified that because he was not aware of any evidence that employment as a firefighter can aggravate, contribute to, accelerate or cause aortic stenosis, he does not think that it does. He further explained that there is some thought that stress or increased vigorous activity could potentially increase the likelihood that a person would have premature degeneration of a particular valve, but there is no proof that it does.

*Meche v. City of Crowley Fire Department*, 96-577 (La.App. 3 Cir. 2/12/97), 688 So.2d 697, *writ denied*, 97-632 (La. 4/25/97), 692 So.2d 1088, presented a claim similar to Mr. Olivier's. There, the firefighter was diagnosed with "sick sinus syndrome," a condition which required that a pacemaker be implanted. Several doctors testified that the firefighter's employment did not contribute to his condition but also testified that his condition resulted from an unknown cause. This court concluded that the expert testimony regarding causation of the firefighter's condition was "equivocal"; therefore, "the employer [had] not sustained its burden of proving by affirmative evidence that Meche's employment as a fireman could not have contributed to his condition." *Id*. at 702.

As explained in *McClure* and *Meche*, Dr. Ramlawi's testimony that he did not think Mr. Olivier's aortic stenosis was caused by his employment as a firefighter was insufficient to rebut the Heart and Lung Act's presumption because

6

he could not rule out that firefighting contributed to, accelerated, or aggravated the aortic stenosis. Accordingly, we find no error with the WCJ's determination to this effect.

***Did the WCJ err in refusing to reconsider the exception of prescription?***

In its third assignment of error, the City urges that the WCJ erred in not reconsidering its exception of prescription when re-urged at trial on the basis that his denial of the exception was the law of the case. Application of the law of the case doctrine is discretionary; it should not be applied if palpable error occurred or an injustice would occur. *Arceneaux v. Amstar Corp.*, 10-2329 (La. 7/1/11), 66 So.3d 438.

The City's writ application on this issue was denied by a panel of this court, which included the writer of this opinion, because the panel found "no error with the trial court's ruling." *Olivier v. City of Eunice*, an unpublished writ bearing docket number 09-1325 (La.App. 3 Cir. 3/2/10). The supreme court thereafter denied the City's application for supervisory and/or remedial writs. *Olivier v. City of Eunice*, 10-757 (La. 6/4/10). We find no palpable error in our prior ruling on this issue and, therefore, find the law of the case doctrine is applicable. This assignment of error lacks merit.

***Reimbursement of Medical Expenses***

Mr. Olivier sought to recover and was awarded the percentage of his medical expenses that corresponded to the percentage of premium he paid for health insurance through his wife's employer. The City complains that this was error.

No statute specifically provides Mr. Olivier with a right of action to recover the medical expenses he seeks. His claim is based indirectly upon La.R.S. 23:1203 and La.R.S. 23:1212 as interpreted by jurisprudence. Section 1203 requires

employers to furnish all medical treatment for injured employees subject to the Workers Compensation Act (WCA). Section 1212 provides, in pertinent part:

> (A) Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.

The City's defense to Mr. Olivier's claim for reimbursement is premised upon Section 1212 and La.R.S. 23:1205, which provides health insurers that have paid medical expenses for injured employees a right of reimbursement for 100% of medical expenses against employers responsible for workers' compensation benefits. La.R.S. 23:1205(B), 1205(C)(2). It argues that it could be required to pay Mr. Olivier $41,056.88 pursuant to the judgment *and* to reimburse Blue Cross $115,653.17 in medical expenses it paid, which together exceed Mr. Olivier's total medical expenses. The City further argues that Section 1212 does not provide Mr. Olivier a right to recover these medical expenses.

Jurisprudence predating the enactment of Section 1212 and Section 1205 interpreted La.R.S. 23:1163, which prohibits an employer from requiring an employee to contribute toward the cost of workers' compensation, as prohibiting an offset or credit for employers against medical expenses paid for by group health insurance which was provided as a fringe benefit to the injured employee or was paid for by the employer of the employee's spouse. *Bryant v. New Orleans Pub. Serv., Inc.,* 414 So.2d 322 (La.1982); *Theriot v. Am. Employees Ins. Co.,* 482 So.2d 648 (La.App. 3 Cir. 1986); *Woolsey v. Cotton Bros. Bakery Co., Inc.,* 535 So.2d

8

1119 (La.App. 2 Cir. 1988), *writ denied*, 537 So.2d 1168 (La.1989). *See also, McKenzie v. City of Bossier City*, 585 So.2d 1229 (La.App. 2 Cir. 1991). In these cases, the employer sought to offset medical insurance benefits provided by group health insurance against medical expenses due under the WCA.

In *Bryant*, 414 So.2d 322, the employee also sought reimbursement from his employer for medical benefits paid by his group health insurer. The trial court granted the employer's request for an offset. The court of appeal reversed the offset, finding that the collateral source rule applied to workers' compensation claims, as well as tort claims, and prohibited an offset against an employer's duty to furnish medical care under the workers' compensation statute. The supreme court affirmed the court of appeal's holding on the basis that La.R.S. 23:1163 prohibits an employer from requiring an employee to contribute toward the cost of workers' compensation.

Three justices dissented in *Bryant*. Justice Marcus opined that the employee would be permitted to enjoy a double recovery if she recovered medical expenses she did not pay and that neither Section 1163 nor the collateral source rule was applicable to her claim, while Justices Lemmon and Blanche observed that the employer did not collect anything from the claimant to fund its workers' compensation coverage.

Section 1212 was enacted in 1989 to provide the offset sought by employers but rejected in *Bryant,* 414 So.2d 322, *Theriot*, 482 So.2d 648, *Woolsey*, 535 So.2d 1119, and *McKenzie*, 585 So.2d 1229. It specifically addressed the supreme court's finding in *Bryant* that to allow an offset would be a violation of Section 1163 and provides that it does not.

9

In *Principal Mutual Life Insurance Co. v. Progressive United Corp.,* 28378 (La.App. 2 Cir. 5/8/96), 674 So.2d 1073, *writ denied*, 96-1474 (La. 9/20/96), 679 So.2d 436, a health insurer sought to have Section 1205 applied retroactively to recover medical expenses it paid for an employee injured in the course and scope of his employment. The court refused to apply the statute retroactively because it made substantive changes to the WCA. Although the employee had not made a claim for reimbursement of medical expenses, the court stated in dicta that the employee "retained the right to claim from his employer a percentage of the medical expenses that *were paid* by [his health insurer], equal to the percentage of [his] direct monetary contribution toward the group health insurance premiums." *Id.* at 1075.

In *Parfait v. Gulf Island Fabrication, Inc.*, 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, the employer sought a credit under La.R.S. 23:1212. The court awarded only a portion of the credit sought. As provided in Section 1212, the court denied a credit as to the portion of medical expenses paid by the health insurer that corresponded to premiums paid by the employee or his spouse. As in *Principal*, the employee had not made a claim for reimbursement of medical expenses. The court, however, stated in dicta that because the employee had paid a portion of the premiums for his group health insurance, he retained the right to be reimbursed by his employer for medical expenses that *were* paid by his health insurer "equal to the percentage of [his] contributions toward the group health insurance premiums," as well as medical expenses that were *not* paid by his health insurer. *Id.* at 23. The court noted that the employer's Section 23:1203 medical expense obligation to the employee had not been offset or extinguished pursuant to Section 1212. *Id.*

Neither *Principal* nor *Parfait* is authority for the WCJ's award, as an employee's right to recover medical expenses paid by his health insurer was not at issue in either case and Section 1212 specifically limits the credit in favor of an employer to the percentage of medical expenses that correlates to the percentage of premium not paid by the employee or his spouse's employer. *Bryant,* 414 So.2d 322, *Theriot*, 482 So.2d 648, *Woolsey*, 535 So.2d 1119, and *McKenzie*, 585 So.2d 1229, are not authority for the WCJ's award, as they predated the enactment of Sections 1205 and 1212.

The exact issue presented here has not been addressed, but the claims of insurers under Section 23:1205(B) were addressed in *Chailland Business Consultants v. Duplantis*, 03-2508, 03-2509 (La.App. 1 Cir. 10/29/04), 897 So.2d 117, *writ denied*, 04-2922 (La. 2/4/05), 893 So.2d 878, and in *Ryan v. Blount Bros. Construction, Inc.*, 40,845 (La.App. 2 Cir. 4/19/06), 927 So.2d 1242, *writ denied*, 06-1219 (La. 9/15/06), 936 So.2d 1272. Although not directly on point, they provide some guidance to the resolution of this issue. Health insurers sought to recover 100% of the health insurance benefits they paid on behalf of injured workers from the workers' employers or their workers' compensation insurers. Without success, the employers argued that pursuant to Section 1212(B), payment by anyone other than an employee or on the employee's behalf by someone designated in the provision extinguished the health insurers' claims against them.

The courts awarded recovery to the insurers as requested because Section 1205 was enacted after Section 1212 was enacted and because Section 1205 specifically provides that a health insurer is entitled to be reimbursed 100% of the benefits it paid. Additionally, the courts noted that the legislative history of Section 1212 indicates that it was enacted to prevent windfall recovery by

employees when an employer and a health insurer paid the same medical expenses and held that Section 1205(B) was a specific exception to the general rule provided in Section 1212.

The purpose of the WCA, the history of Sections 1205 and 1212, and the legislature's enactment of Section 1205 after jurisprudence awarded or indicated workers' compensation claimants had a right to be paid medical expenses they did not pay lead us to conclude that the legislature did not intend for workers' compensation claimants to recover medical expenses they did not pay. Recent supreme court decisions in *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945, and *Bellard v. American Central Insurance Co.*, 07-1335, 07-1399 (La. 4/18/08), 980 So.2d 654, reinforce that conclusion.

In *Bellard*, the supreme court determined that an uninsured motorist (UM) insurer was entitled to credit for medical and disability wage benefits paid on behalf of the plaintiff, an injured employee, by her employer's workers' compensation insurer. The UM insurance was purchased by the employer. In *Cutsinger*, although the employee purchased the UM insurance herself, the supreme court reached the same conclusion. The court's holdings in these cases were premised on its determination that the collateral source doctrine did not apply; therefore, the employee was not entitled to recover medical and disability wage benefits already paid by her employer.

In each case, the supreme court began with an analysis to determine whether the UM insurer and the workers' compensation insurer were solidary obligors, as provided in La.Civ.Code art. 1794, because performance by one solidary obligor satisfies any other solidary obligor's liability to the obligee. La.Civ.Code art. 1794. The court identified three factors required for a solidary obligation: "the

obligors (1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability toward the creditor." *Bellard*, 980 So.2d at 663-64. *See also Cutsinger.* The UM insurers and the workers' compensation insurers in *Bellard* and *Cutsinger* were determined to be solidary obligors because under their insuring agreements and the law, they shared coextensive obligations to reimburse the employee/tort victim for lost wages and medical expenses which resulted from the tortfeasors' behavior.

As the supreme court did in *Bellard* and *Cutsinger*, we now consider whether the City and Blue Cross are solidary obligors. With regard to the first element of solidarity, the City's and Blue Cross's insuring agreements are not in the record. Nevertheless, under the terms of Sections 1203 and 2505(C)(1),[1] the City and Blue Cross are both obligated to provide Mr. Olivier his medical expenses for the treatment of his heart condition.

In *Bellard* and *Cutsinger*, the obligations of UM insurers and workers' compensation insurers were at issue, and to the extent that their obligations to the plaintiff employees overlapped, they were found to be obliged for the same thing. The obligations of health insurers and employers or workers' compensation insurers are similar to, but not the same as, those of UM insurers and workers' compensation insurers. The central purpose of workers' compensation insurance and health insurance is protection of an injured or ill person. The WCA protects the person when his injury or illness is related to his employment. Health

---

[1] Louisiana Revised Statutes 23:1205(C)(1) provides, in pertinent part:

In the event that the workers' compensation payor has denied that the employee's injury is compensable under this Chapter, then any health insurer which contracts to provide health care benefits for an employee shall be responsible for the payment of all medical benefits pursuant to the terms of the health insurer's policy.

insurance protects the person in all situations when he is injured or ill. For these reasons, we find the City and Blue Cross are obliged for the same thing.

Next, we consider whether the City and Blue Cross can each "be compelled for the whole of their common liability." *Bellard*, 980 So.2d at 665. Neither the City nor Blue Cross can plead the benefit of division as if it were alone; therefore, "each may be compelled for the whole of their common liability." *Id.* "[O]bligations may be solidary even though the debtors are bound differently from each other, and even if their obligations are subject to different terms and conditions." *Bellard*, 780 So.2d at 666 (citing La.Civ.Code arts. 1791, 1798). Therefore, although the City's liability is set forth by law, Blue Cross's liability is set forth by the terms of its policy and the law, and both are not liable for 100% of Mr. Olivier's medical expenses, they can be solidary obligors.

Lastly, payment of Mr. Olivier's medical expenses by either the City or Blue Cross exonerates the other as to their common liability to Mr. Olivier's health care creditors. Accordingly, we conclude that the City and Blue Cross are solidary obligors.

In *Cutsinger*, 12 So.3d at 952, the supreme court concluded as it had previously in *Bellard* and in *Fertitta v. Allstate Insurance Co.*, 462 So.2d 159 (La.1985), that "the collateral source rule does not apply to override the principles of solidarity expressly provided by our Civil Code." The fact that the plaintiff had paid for her UM insurance, but the plaintiffs in *Bellard* and *Fertitta* had not, did not result in a different conclusion.

Important considerations concerning the collateral source rule noted by the supreme court in *Cutsinger* are applicable here. The purpose of the collateral source rule is to deter tortious behavior by preventing tortfeasors from benefitting

14

from victims' receipt of monies from independent sources. The plaintiff did not suffer a diminution in her patrimony because workers' compensation benefits were available to her; therefore, the court concluded that the plaintiff would "receive a windfall or double recovery of lost wages and medical benefits if the collateral source rule [was] applied to" deny the UM insurer a credit for the medical expenses already paid by the workers' compensation carrier. *Id.* at 954. The court continued and explained:

> [W]e cannot say that [the plaintiff] paid for uninsured motorist coverage to compensate her for benefits such as lost wages and medical payments previously paid by her employer's workers'compensation insurer or that applying the collateral source rule and disallowing the credit would not result in a windfall or double recovery. That is because the uninsured motorist policy she purchased contained language specifying that any amount payable under uninsured motorist coverage shall be reduced by any amount paid under workers' compensation benefits. Consequently, when she paid the premium for the uninsured motorist coverage, she did not pay for it to cover benefits paid by the workers' compensation insurer.

*Id.* at 954-55.

While the converse of the situation in *Cutsinger* is presented here, i.e., the health insurer paid the employee's medical expenses, the logic remains applicable. The City is legally obligated to pay 100% of Mr. Olivier's medical expenses related to injuries or illness resulting from his employment, and Blue Cross has a right to be reimbursed by the City for 100% of the benefits it paid. La.R.S. 23:1205(B), 1205(C)(2). Accordingly, Mr. Olivier did not pay for health insurance to cover workers' compensation benefits owed to him by the City.

For the following reasons, we find as the supreme court did in *Cutsinger*, *Bellard*, and *Fertitta*, that the collateral source rule does not apply here. First, the purpose of the rule, tort deterrence, is not furthered by application here, as no tort occurred. Second, Section 1212 was enacted, at least in part, to prevent the

windfall recovery of medical expenses by employees when the same medical expenses were paid their employers and their health insurers. *Chailland*, 897 So.2d 117. Third, Section 1205 provides health insurers a right of 100% reimbursement against employers and their workers' compensation insurers for medical expenses they paid for employees that are the responsibility of the employers or their workers' compensation insurers. Fourth, employees are entitled to penalties and attorney fees when employers or workers' compensation insurers do not pay covered medical expenses. Fifth, "[t]he purpose of the [WCA] was to create a compromise in which both employees and employers surrender certain advantages in exchange for others which are more valuable to both parties and society," *Deshotel v. Guichard Operating Co., Inc.*, 03-3511, p. 7 (La. 12/17/04), 916 So.2d 72, 76-77, and to make an employer pay an employee a percentage of medical expenses paid by his health insurer when the insurer has a right to 100% reimbursement of all medical expenses it paid, resulting in the employer paying more than the employees total medical expenses, is contrary to the purpose of the WCA.

For these reasons, we conclude the WCJ's award of $41,056.88, 35.5% of the medical expenses already paid by Blue Cross, was error, and it is reversed.

*Attorney Fees*

Mr. Olivier answered the City's appeal, seeking an increase in the amount of attorney fees awarded by the WCJ and an award of attorney fees for work performed by his attorney on appeal.

First, Mr. Olivier urges that the award of $120.00 per hour for work performed before the WCJ should be increased to $200.00 per hour. He seeks to increase the WCJ's award from $12,600.00 to $21,000.00. The WCJ was in a

better position than this court to assess both the time and the quality of counsel's work in this case, as compared with other cases, and we find he did not abuse his discretion in awarding $12,600.00. Accordingly, we will not disturb the award. *See Evergreen Presbyterian Ministries v. Wallace*, 07-313 (La.App. 3 Cir. 10/10/07), 968 So.2d 256. We award $3,500.00 in attorney fees for work performed on appeal.

## DISPOSITION

For the reasons discussed herein, the WCJ's award of $41,056.88 to Mr. Olivier is reversed; the remainder of judgment is affirmed. Mr. Olivier is awarded $3,500.00 in attorney fees for work performed on appeal. Costs of $873.50 are assessed 75% to the City of Eunice and 25% to Mr. Olivier.

**REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 11-1054

**DWAYNE OLIVIER**

**VERSUS**

**CITY OF EUNICE**

**COOKS, J., agrees in part and dissents in part**.

The majority's decision reversing the medical expense award represents a fundamental departure from and misunderstanding of the Supreme Court's prior rulings.