# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #057

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **19th day of October, 2016**, are as follows:

**BY GUIDRY, J.**:

2016-C -0055        RICHARD J. BORJA v. FARA ST. BERNARD PARISH GOVERNMENT

For the reasons set forth above, we hereby reverse the court of appeals' judgment affirming the workers' compensation judge's rulings sustaining the exception of prescription and the exception of res judicata.
REVERSED and REMANDED.

SUPREME COURT OF LOUISIANA

No. 2016-C-0055

RICHARD J. BORJA

VERSUS

FARA
ST. BERNARD PARISH GOVERNMENT

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH
CIRCUIT, OFFICE OF WORKERS' COMPENSATION DISTRICT 7

GUIDRY, J.

We granted the claimant's writ application to review the decision of the court of appeal that affirmed the workers' compensation court judgment sustaining the employer's exception of prescription and exception of *res judicata.* For the reasons that follow, we reverse the lower court's judgment and remand the matter to the Office of Workers' Compensation for further proceedings.

FACTS AND PROCEDURAL HISTORY

The claimant, Mr. Richard J. Borja, was employed by St. Bernard Parish Government ("St. Bernard") as a firefighter beginning in July 1973. In March of 2004, the claimant filed a disputed claim for compensation alleging that he had injured his right knee and right thumb in an accident on June 2, 2002, and he also alleged he had an occupational disease. He described his injuries on the 2004 disputed claim for compensation as a "torqued knee," caused by "carrying [a] spine board down steps to stretcher and picking up syringes" and "Heart and Lung," indirectly referencing the Fireman's Heart and Lung Act.[1] In the disputed claim,

_____

[1] La. R.S. 33:2581, the Fireman's Heart and Lung Act, states as follows:

the claimant asserted he had reported the accident on June 3, 2002. After the accident, the claimant began receiving maximum workers' compensation benefits, which continued until St. Bernard terminated them on June 3, 2003. In the meantime, the claimant had taken disability retirement in January 2003. The specific nature of the dispute as identified on the 2004 disputed claim form was that his wage benefits had been terminated or reduced on June 3, 2003, and that medical treatment was not being paid. The disputed claim form was filed within one year of the termination of the benefits.

St. Bernard answered the 2004 litigation by admitting the claimant had sustained an injury to his right knee on June 2, 2002. However, it disputed the thumb injury as well as any heart and lung claims as being related to his employment, stating that it "ha[d] no knowledge as to plaintiff's claim for an alleged right thumb injury of 6-2-02 nor occupational disease nor heart and lung claim and alternatively, they are prescribed." While St. Bernard conceded the claimant had been receiving the maximum benefits from the date of the accident until January 2003, it also maintained that because the claimant voluntarily retired in that month, he had removed himself from the workforce and was no longer entitled to future workers' compensation benefits.[2]

---

Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.

[2] St. Bernard ultimately abandoned this argument in the face of the claimant's response that, while he had retired from the department, he had not permanently removed himself from the workforce given that he had long maintained employment outside of the department until he became disabled.

Throughout the 2004 litigation, the claimant had consistently argued that his heart and lung conditions were related to his employment. On May 4, 2005, the claimant's counsel wrote: "Additionally, Mr. Borja has heart and lung conditions which were caused by his employment as well." Further, on July 31, 2006, the claimant's counsel wrote: "You will also note in his personal file that he was hospitalized twice for toxic smoke inhalation, [and] has suffered with chronic throat and lung problems since that date. He has had pneumonia on several occasions and has been actively been [sic] treated by Dr. Jeannine Parker for these lung conditions for some time." The dispute eventually went to mediation, which resulted in a compromise that claimant would receive back compensation payments in two lump sums, bringing him current to March 24, 2008, and that "effective today, claimant will receive weekly indemnity benefits of $398," which all parties agree was the maximum the claimant could receive at that time. On October 6, 2008, the claimant filed a motion to dismiss the 2004 litigation noting "that this matter has been settled in full," which the trial court granted on October 9, 2008.

On August 16, 2013, St. Bernard, identifying the claimant's benefits as Supplemental Earnings Benefits ("SEBs"), gave notice that it would terminate SEBs effective August 27, 2013, on the basis that he will have received the full 520 weeks of payments as of August 26, 2013. Thereafter, on November 22, 2013, the claimant filed another disputed claim for compensation citing "knees, heart and lung" as his injuries. Specifically, he described his June 2, 2002 injury to the knee as follows: "on a medical call in Tiger Town while helping EMS carry stretcher down stairs, torqued my knee while trying to balance the stretcher due to person on other end pulling it." He also cited "Heart and Lung – permanent disability." He cited the particular dispute as termination of his wage benefits on August 27, 2013,

3

and also as follows: "Employee is totally disabled – not only [have] both knees been replaced but Employee suffers from significant heart/lung issues which is disabling." He contended that, because he was a fireman, his "heart/lung issues are presumed related."

In response, St. Bernard filed exceptions of prescription and *res judicata*. St. Bernard's exception of prescription alleged the 2013 claims for medical benefits were prescribed on their face pursuant to La. R.S. 23:1209(C), because more than three years had elapsed between the May 22, 2009 payment of medical benefits for his knee injury and the November 22, 2013 filing of the disputed claim for compensation. Also, St. Bernard asserted the 2013 claim for an occupational injury under the Firefighter's Heart & Lung Act had prescribed pursuant to La. R.S. 23:1031.1, because the claimant admitted that: (1) he had heart and lung issues on his 2004 disputed claim for compensation; (2) on May 4, 2005, he acknowledged that he had "heart and lung conditions which were caused by his employment;" and (3) he took disability retirement in 2003. Further, St. Bernard's exception of *res judicata* asserted the November 2013 claims were previously the subject of litigation between the same parties in 2004, and were resolved through a settlement and dismissal of the litigation in 2008.

The claimant opposed the exceptions of prescription and *res judicata* arguing there had always been a dispute over his disability classification and that he "has always contended that he is permanently and totally disabled, while defendant [St. Bernard] still classified him as temporarily, totally disabled." According to his opposition, the 2008 settlement and dismissal of litigation pertained only to his dispute for back pay and reinstatement of benefits and that "[t]he parties agreed to fight this battle [of whether the claimant was temporarily or permanently disabled] at another date when needed, because [the claimant was]

4

already receiving the maximum benefits available and had received his back pay." Mr. Borja also argued that, even though his "SEB benefits may have expired, a claim for total and permanent benefits has not because this claim was filed shortly after his weekly compensation was discontinued."

After a hearing on the motions, the workers' compensation judge signed a written judgment on December 1, 2014, which granted the exception of *res judicata* for the knee injury, and granted the exception of prescription as to the claim under the "Heart and Lung Statute." In her reasons for judgment, the workers' compensation judge found that the case was settled and dismissed on October 9, 2008; that the claimant was paid medical benefits and indemnity benefits for his right knee; that the last payment of medicals to the claimant was May 22, 2009; that the claimant's last indemnity payment was August 26, 2013, for his knee injury; and that another claim was filed by the claimant on November 22, 2013, alleging the claimant was entitled to indemnity benefits under the Heart & Lung statute for permanent disability. The workers' compensation judge found the claim was prescribed on its face, thus the claimant had the burden of proving interruption of prescription in some manner. The workers' compensation judge found that no medical benefits had been paid for any accident or injury under the Workers' Compensation Act since 2009 and that payment of health care costs by the health insurer did not have any effect on the accrual of prescription for the workers'compensation medical benefits. The judge reasoned the claimant's right to medical benefits had prescribed by the passage of three years under La. R.S. 23:1209(C), and that his right to medical benefits had prescribed as to occupational injury claims under La. R.S. 23:1031.1. The judge reasoned that the payment of benefits for the 2002 knee injury did not interrupt the running of prescription for the payment of permanent and total disability benefits for the heart and lung

5

condition, which is a separate and distinct occupational disease claim related to the employment asserted in 2004. The judge further found the claim for medical and indemnity benefits are *res judicata*.

The workers' compensation judge noted that the claimant's workers' compensation claim, which was filed on April 1, 2004, included claims for a "right knee" injury and "heart and lung" injuries. However, the judge noted, a dismissal was signed on October 9, 2008, indicating the case was settled. The judge noted that the claimant continued to receive indemnity benefits until August 26, 2013, and found that the parties had voluntarily entered into the settlement and thus were bound by its terms. The judge ultimately granted the exception of *res judicata* for the knee injury, as well as the Heart and Lung statute. The judge further granted the exception of prescription under the Heart and Lung statute.

On appeal, a majority of the lower court affirmed in an unpublished opinion. The court of appeal found that Mr. Borja's claim for indemnity benefits for his knee injury was barred by *res judicata*, and that his claims for indemnity and medical benefits under the heart and lung statute were prescribed. *Borja v. FARA, St. Bernard Parish Government*, 15-435, p. 10 (12/9/15)(not designated for publication). We granted supervisory writs to review the lower court's judgment. *Borja v. FARA, St. Bernard Parish Government*, 16-0055 (03/24/16), 190 So.3d 1187.

DISCUSSION

The purpose of a prescription statute is to afford a defendant economic and psychological security if a cause of action is not pleaded timely, and to protect the defendant from stale claims and the loss of relevant proof. *Giroir v. South Louisiana Medical Center, Div. of Hospitals*, 475 So.2d 1040 (La. 1985). The

6

applicable prescriptive period for claims for workers' compensation benefits is provided by La. R.S. 23:1209, which states in pertinent part:

A. (1) In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter,

(2) Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).

(3) When the injury does not result at the time of or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within three years from the date of the accident,

C. All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.

Claims under La. R.S. 33:2581, the Firemen's Heart and Lung Statute, are governed by the prescriptive periods found in the occupational disease prescription statute. *McElwee v. City of Bossier City*, 34,345 (La. App. 2 Cir. 12/6/00), 775 So.2d 588, 590-91, *writ denied*, 01-0049 (La. 3/9/01), 786 So.2d 737. The applicable prescriptive period for making claims for an occupational disease is provided by La. R.S. 23:1031.1, which states in pertinent part:

A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter

7

the same as if said employee received personal injury by accident arising out of and in the course of his employment.

B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease....

* * *

E. All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
(1) The disease manifested itself.
(2) The employee is disabled from working as a result of the disease.
(3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.

We first turn to the claimant's request for permanent and total disability benefits for either his knee injury or his heart and lung claim or both. For the following reasons, we find the lower courts erred in finding these claims were barred either by prescription or *res judicata*. The lower courts' rulings primarily turned on the import of the 2008 dismissal of the claimant's disputed claim originally filed in 2004. Essentially, St. Bernard asserts the 2008 dismissal disposed of Mr. Borja's claim for indemnity benefits for both the knee injury and the heart and lung condition. The claimant argues the 2004 disputed claim was for disability benefits and medical payments, for both the knee injury and the heart and lung condition, and that the only issue not resolved was whether the total disability was merely temporary or in fact permanent. He argues that, under La R.S. 23:1209(2), where such indemnity payments have been made to an injured worker, the limitation for seeking total, permanent disability shall not take effect until the expiration of one year from the time of making the last payment. The claimant argues that, because his claim for total disability under the Heart and Lung statute was filed within one year of the termination of his SEB benefits, his claim has not prescribed.

8

St. Bernard argues that, although it has paid in full all indemnity benefits, namely SEBs, for the claimant's knee injury, these payments did not interrupt the running of prescription for the payment of permanent and total disability benefits for a heart and lung condition, which is a separate and distinct occupational disease claim related to his employment in 2004. St. Bernard argues the claimant failed to present any evidence establishing medical or disability payments made in relation to his heart and lung claim. Thus, St. Bernard argues the 2013 filing by the claimant to collect medical and indemnity benefits related to his alleged occupational injury is time barred.

We first turn to the effect of the 2008 dismissal of Mr. Borja's 2004 disputed claim. Defendant has raised the issue that the claimant's voluntary dismissal of the 2004 disputed claim bars the modification of his claim for indemnity benefits under the doctrine of *res judicata*.[3] We find the lower courts improperly applied the doctrine of *res judicata* to find that the 2008 agreement resulting in the

---

[3] Louisiana Revised Statutes 13:4231, which sets forth the doctrine of *res judicata*, provides as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Under La. R.S. 13:4231, *res judicata* bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. *Leon v. Moore*, 98-1792, p. 4 (La. App. 1 Cir. 4/1/99), 731 So.2d 502, 504, *writ denied*, 99-1294 (La. 7/2/99), 747 So.2d 20. Thus, a court must determine whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. *Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 95-0654, 95-0671, p. 12 (La. 1/16/96), 666 So.2d 624, 631. The burden of proof is upon the pleader to establish the essential facts to sustain the plea of *res judicata*. *Insurance Associates, Inc. v. Francis Camel Construction, Inc.*, 95-1955, p. 3 (La. App. 1 Cir. 5/10/96), 673 So.2d 687, 689.

dismissal of the 2004 disputed claim had disposed of the indemnity issues in full. The claimant correctly asserts the doctrine of *res judicata* applies in workers' compensation cases only in certain limited situations.[4] The jurisprudence is clear

---

[4] The claimant argues the doctrine of *res judicata* does not apply in the context of a workers' compensation matter, unless there has been a final judgment denying benefits and after the exhaustion of all appeals. He cites the continuing jurisdiction of the workers' compensation judge as set forth in La. R.S. 23:1310.8, entitled "Jurisdiction continuing; determining as to final settlement" and which provides as follows:

A. (1) The power and jurisdiction of the workers' compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified, including the right to require physical examinations as provided for in R.S. 23:1123; however, upon petition filed by the employer or insurance carrier and the injured employee or other person entitled to compensation under the Workers'Compensation Act, a workers' compensation judge shall have jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition, subject to the provisions of law relating to settlements in workers' compensation cases.

(2) The workers' compensation judge may have a full hearing on the petition, and take testimony of physicians and others relating to the permanency or probable permanency of the injury, and take such other testimony relevant to the subject matter of such petition as the workers' compensation judge may require. The workers' compensation judge may consider such petition and dismiss the same without a hearing if in his judgment the same shall not be set for a hearing.

(3) The expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the workers' compensation judge decides it is in the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly and the workers' compensation judge may make an award that shall be final as to the rights of all parties to said petition and thereafter the workers' compensation judge shall have no jurisdiction over any claim for the injury or any results arising from same. If the workers' compensation judge should decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the workers' compensation judge shall have the same jurisdiction over the matter as if said petition had not been filed.

B. Upon the motion of any party in interest, on the ground of a change in conditions, the workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award.

C. This Section shall not apply to the calculation of the monthly benefit amount pursuant to R.S. 23:1221(3).

D. A petition to modify a judgment awarding benefits shall be subject to the prescriptive limitations established in R.S. 23:1209.

that workers' compensation judgments are treated differently from ordinary judgments, because if the rules of finality applied to ordinary civil judgments are applied to workers' compensation judgments, the flexibility of the workers' compensation system would be greatly restricted. *Falgoust v. Dealers Truck Equip. Co.*, 98-3150, pp. 8-9 (La. 10/19/99), 748 So.2d 399, 405. Where the legislature has expressly provided that an award or judgment can be subject to a claim of modification, *res judicata* does not apply. *Id.*, p. 9, 748 So.2d at 405-06; *Jeanise v. Cannon*, 04-1049 (La. App. 3 Cir. 2/23/05), 895 So.2d 651, *writ denied*, 05-0785, 05-0788 (La. 5/13/05), 902 So.2d 1021. In La. R.S. 23:1310.8, the legislature has expressly provided that a compensation award may be modified by either party because of change in disability after an award has been made.

> Within the entire scheme [of workers' compensation], the concept of modification is unique because it allows a case to be reopened and the award amended after the judgment becomes final. The purpose of the modification statute is to allow adjustments to be made after judgment "to insure that the employee will be paid compensation during the full period of his disability and that the employer will not be required to pay for any longer than this period of disability."

*Madere v. W.S. Life Ins. Co.*, 03-110, pp. 4-5 (La.App. 5 Cir. 4/29/03), 845 So.2d 1222, 1225 (footnotes omitted).

Thus, the doctrine of *res judicata* would apply in a workers' compensation case only in the instance of a final judgment denying benefits or a lump sum

---

E. A judgment denying benefits is *res judicata* after the claimant has exhausted his rights of appeal.

F. An award of temporary total disability benefits may be modified by the filing of a motion for modification with the same court that awarded the benefits and under the same caption and docket number without the necessity of filing a new dispute and appearing at a mediation conference. The court shall expedite the hearing on the modification proceedings in accordance with the procedure established in R.S. 23:1124(B).

settlement approved by the workers' compensation judge under La. R.S. 23:1271 and 23:1274. Here, St. Bernard, which bore the burden of proof for its exception of *res judicata*, has failed to establish either. First, the claimant's voluntary dismissal of his disputed claim for benefits cannot fairly be deemed a final judgment denying benefits. From the record before us, there is no evidence the parties even agreed on the issues being litigated much less the terms of the agreement reached after mediation of the disputed claim that resulted in the dismissal. Second, there is no evidence there was a settlement of all of the issues, much less a lump sum settlement, that was approved by the workers' compensation judge. *See* La. R.S. 23:1271 and 23:1274. Workers' compensation is a continuing liability of the employer. *See* La. R.S. 23:1310.8. In general, a determination of the extent of disability in a prior proceeding is not *res judicata* as to a renewed request for a reevaluation of the issue in a petition seeking modification of the prior judgment. *See* 13 H. Alton Johnson, Louisiana Civil Law Treatise, Workers' Compensation Law and Practice § 284, p. 797 (5th ed. 2010). Even if the scope of the 2008 settlement of the 2004 disputed claim is uncertain, had the parties proceeded to a judgment that concluded the claimant was temporarily totally disabled at that time and entitled to maximum SEBs, the doctrine of *res judicata* would not have precluded the claimant from filing a later claim on the basis there was a change in circumstances and the claimant was now permanently disabled. La. R.S. 23:1310.8. Accordingly, Mr. Borja's claim for permanent disability benefits, whether the result of his knee injury or his heart and lung condition, was not barred by the doctrine of *res judicata*, and the lower courts erred in finding otherwise.

Similarly, we find the lower courts erred in finding that Mr. Borja's claims for benefits under the heart and lung statute were barred by prescription. We thus answer in the affirmative whether payment of maximum disability payments

following the 2004 disputed claim, which included a claim for indemnity benefits for both the knee injury and the heart and lung issues, interrupted prescription with respect to the claimant's 2013 disputed claim for permanent disability for the same injuries filed within one year of the termination of indemnity benefits. Although the claimant did not assert in the 2004 form that he was totally and permanently disabled at the time, he did state that his injuries included occupational disease and his right knee. Based on that disputed claim form, in 2008 St. Bernard paid his back compensation pay and commenced weekly ongoing indemnity benefits -- the maximum benefits allowed at the time -- without a sunset or end date. There is no indication in the record, either in the mediation documents or the order of dismissal, that the ongoing payments were only for the knee injury, that the payments were SEBs for the knee injury, or that the claimant had relinquished any claim for permanent total disability as a result of his heart and lung condition. There is no dispute that the claimant consistently asserted both his knee injury and his heart and lung condition as the causes of his disability. Although St. Bernard may have believed the benefits being paid were SEBs for the claimant's knee injury, it is equally clear from the record that the claimant, although initially unsure of whether he could return to work, had always maintained his heart and lung condition under the statute. As noted by the dissenting judge below, there is no basis in the record to conclude that the maximum disability payments received by the claimant were not in part for the heart and lung issues as well as the knee injury. Indemnity payments are for disability and not necessarily a specific incident. *See* 14 H. Alton Johnson, Louisiana Civil Law Treatise, Workers' Compensation Law and Practice § 384, p. 373 (5th ed. 2010). In general, payment of indemnity benefits for one accident or injury does not have any effect on the accrual of prescription for a separate and distinct accident or injury. *See Lopez v.*

13

*City of New Orleans*, 377 So.2d 77, 79 (La. 1979); *Daigle v. Shelby J. Gaudit Contractors, Inc.,* 01-2052 (La. App. 1 Cir. 9/27/02), 835 So.2d 554.  However, we conclude from the record before us the lower courts manifestly erred in finding the indemnity payments to Mr. Borja had been made only for his knee injury and not for disability as a result of both his knee injury and his heart and lung condition.  Accordingly, the claimant's August 2013 disputed claim for permanent and total disability under the heart and lung statute was timely filed within one year of the termination of his indemnity benefits in June of 2013.  *See* La. R.S. 23:1209

We next turn to the issue of the claimant's request for medical benefits under the heart and lung statute.  In the claimant's 2013 disputed claim for compensation, he sought permanent and total disability benefits, as well as medical benefits, for an occupational disease claim under La. R.S. 33:2581. *See* Note 1, *supra*. The trial court found that St. Bernard's last payment of medical benefits for the claimant's knee injury was made on May 22, 2009. Both lower courts found that, because the claimant's request for payment of additional medical benefits was not filed until September 11, 2013, the claim for medical benefits under the heart and lung statute was prescribed on its face. When a workers' compensation claim is prescribed on its face, the claimant bears the burden of showing the running of prescription was suspended or interrupted in some manner. *See Causby v. Perque Floor Covering,* 97-1235 (La. 01/21/98), 707 So.2d 23, 25.

Because the claimant could not provide evidence of any medical benefit payment made under the Louisiana Workers' Compensation Act by St. Bernard after 2009, he argued that a medical payment made by his health insurer interrupts prescription on a workers' right to seek payments under the Act. The lower courts found no merit to the argument that a payment made by a health insurer interrupts prescription for the workers' compensation medical benefits. The court of appeal

14

found the decision from another circuit in *Leblanc v. Lafayette Consolidated Government*, 07-1608 (La. App. 3 Cir. 5/28/08), 983 So.2d 1022, persuasive. In *Leblanc,* the appellate court found the wording of La. R.S. 23:1209(C) clear and held that the medical payments referenced in the prescriptive statute were only "payments made pursuant to an employer's obligation under the Louisiana Workers' Compensation Act, and not to payments such as those made here pursuant to a group health plan." Applying this reasoning to the instant case, the lower court concluded that all medical benefits were prescribed because the last medical payment made by St. Bernard for the claimant was in May of 2009, more than three years prior to the filing of his disputed claim in 2013.

The claimant argues in this court that the *Leblanc* case is inapposite because it did not pertain to a firefighter with a heart and lung disease or any other occupational disease. He cites two cases he believes are more on point: *Olivier v. City of Eunice*, 11-1054 (La. App. 3 Cir. 6/6/12), 92 So.3d 630, *writ denied*, 12-1570 (La. 10/13/12), 98 So.3d 874; and *Perrodin v. Lafayette City*, 03-1681 (La. App. 3 Cir. 6/30/04), 879 So.2d 385, *writ denied*, 04-1967 (La. 11/8/04), 885 So.2d 1136.

In *Olivier*, the claimant, a firefighter seeking medical payments under the heart and lung statute, was awarded 35% of his medical expenses for his heart-related problems, proportional to the amount he had paid as a premium for his health insurance coverage. In reversing that award, the court reasoned that the city and its health insurer were solidary obligors as they both were obligated to pay the claimant's medical expenses. However, because the health insurer had a right of reimbursement from the city for 100% of the benefits it paid, under La. R.S. 23:1205, the firefighter had not paid for health insurance to cover workers' compensation benefits owed to him by the city. The court noted, *inter alia*, that La.

15

R.S. 23:1212 was intended in part to prevent the windfall recovery of medical expenses by employees when the same medical expenses were paid by employers and their health insurers. *Olivier*, 11-1054, pp. 15-16, 92 So.3d at 640.

In *Perrodin*, the claimant was a firefighter who sought disability and medical payments under the heart and lung statute. The city filed an exception of prescription asserting the claimant had suffered from the condition for many years prior to filing the claim, even though he had filed his suit within one year of the date he had become disabled. The court rejected that argument, reasoning that it would be absurd to allow the claimant to receive indemnity benefits under the heart and lung statute but not medical payments. *Perrodin*, 03-1681, p. 6, 879 So.2d at 390.

We find the lower courts erred in concluding the claimant's request for medical benefits under the heart and lung statute had prescribed. We need not address whether the employer and the health insurer are solidary obligors, and thus whether the payment of medical expenses by the health insurer interrupts prescription as to the claim for medical payments under the workers' compensation act. The record here shows the 2009 payment of medical expenses pursuant to La. R.S. 23:1203 was for the claimant's knee injury, rather than his heart and lung condition under La. R.S. 33:2581. The record further shows that, because there has yet been no determination by the workers' compensation judge that the claimant is entitled to benefits under the heart and lung statute, there has been no payment of medical benefits for the heart and lung condition such that the three-year prescriptive period in La. R.S. 23:1209(C) would have commenced to run. We tend to agree with the *Perrodin* court that it would be illogical to find that a claim for medical benefits under the heart and lung statute would be prescribed before it has been determined the claimant is entitled to benefits under that statute.

16

Accordingly, we conclude the lower courts erred in finding that Mr. Borja's claims for medical benefits under the heart and lung statute had prescribed when he timely filed his 2013 disputed claim asserting permanent and total disability as a result of his heart and lung condition.

DECREE

For the reasons set forth above, we hereby reverse the court of appeal's judgment affirming the workers' compensation judge's rulings sustaining the exception of prescription and the exception of *res judicata*.

**REVERSED and REMANDED**